IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DARON D. SCOTT,

       Plaintiff,

v.                                             CV 07-1228 WPL/LAM

GADSDEN INDEPENDENT SCHOOL
DISTRICT and RAFAEL GALLEGOS,

       Defendants.

## ORDER ON DEFENDANTS' APPLICATION FOR ATTORNEY'S FEES

This matter is before me on application by Defendants Gadsden Independent School District and Rafael Gallegos for attorney's fees (Doc. 143, 144), Plaintiff Daron Scott's *pro se* response (Doc. 145), and Defendants' reply (Doc. 145). Defendants contend that they are entitled to attorney's fees because they were the prevailing parties, Plaintiff brought statutory claims that allow a prevailing party to recover fees, and because Plaintiff's action was frivolous, unreasonable and without foundation. Plaintiff's *pro se* response focuses in large part on Defendants' motion for costs filed on March 16, 2009. Plaintiff contends that he was deprived of his constitutional right to respond to the motion because Defendants did not give him notice before the Clerk awarded costs on April 6, 2009.[1] For the reasons that follow, I grant Defendants' motion for attorney's fees in part.

---

[1] Plaintiff was represented by counsel until after I entered judgement in favor of Defendants. Defendants filed a motion to tax costs on March 16, 2009. (Doc. 138.) On March 18, 2009 Plaintiff's attorney, Paul Gayle-Smith, informed Defense counsel that he intended to withdraw, but he did not file the motion to withdraw until March 29, 2009. (Doc. 139, 145 Ex. A.) His motion indicated that Plaintiff was aware of the pending motion for costs. I granted the motion to withdraw on March 31, 2009. (Doc. 140.) On April 3, 2009, Defendants filed a notice of completion of briefing regarding the motion for costs and the certificate of service reflects that the notice was mailed to Plaintiff. (Doc.141.) The Clerk entered an order settling costs on April 6, 2009. (Doc. 142.) Defendants could not have communicated directly with Plaintiff while he was represented by counsel. MODEL RULES OF PROF'L CONDUCT R. 4.2 (2000). As Defendants point out in their reply, "If the Plaintiff has any legitimate grievance concerning lack of notice with regard to the motion for costs, his grievance is with his former counsel." (Doc. 146 at 2.)

**Legal Standard**

Plaintiff brought both statutory and common law claims, including claims under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, and § 504 of the Rehabilitation Act.  (*See* Doc. 1.)  These statutes allow the prevailing party to recover "reasonable" attorney's fees. *See* 29 U.S.C. § 794a(b); 42 U.S.C. §§ 1988(b), 2000e-5(k). A losing plaintiff may be ordered to pay a defendant's attorney's fees if the suit was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

The Tenth Circuit has noted that "the *Christiansburg* standard is a difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff."  *United States ex rel. Grynberg v. Praxair, Inc.*, 389 F.3d 1038, 1059 (10th Cir. 2004) (internal quotation marks omitted).  It is not enough that a court dismisses claims on a dispositive motion.  *Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995).  A defendant is not entitled to recover fees unless "the record is devoid of any evidence of discrimination."  *Montgomery v. Yellow Freight Sys.*, 671 F.2d 412, 414 (10th Cir. 1982).

**Discussion**

Defendants acknowledge that there is a heavy burden on a defendant who seeks to recover fees. (Doc. 144 at 2, citing *Montgomery*, 671 F.2d at 414.)  They also acknowledge that it is not enough for a court to dismiss claims on a dispositive motion. (Doc. 144 at 3, citing *Jane L.*, 61 F.3d at 1513.)  Nevertheless, Defendants believe that they can meet their burden in this case.  They contend that Plaintiff's failure to establish a prima facie case with regard to some of his claims, his refusal to accept Defendants' settlement offer, and the fact that Defendants prevailed on dispositive

motions demonstrates that the suit was frivolous, unreasonable or without foundation.[2]

There is no dispute that Defendants prevailed in this case.  On February 18, 2009, I granted summary judgment in their favor on Plaintiff's claims under Title VII and 42 U.S.C. § 1981(Doc. 127) and on March 10, 2009, I granted their motion for reconsideration and dismissed Plaintiff's § 504 claims as well (Doc. 136).  Thus, over the course of the litigation, I disposed of all of Plaintiff's statutory claims in Defendants' favor.  While I do not agree  that Plaintiff's rejection of a settlement offer has any bearing on the frivolity or reasonableness of his claims, I do agree that Plaintiff's failure to exhaust administrative remedies and inability to establish a prima facie case or produce any evidence that Defendants' proffered reasons for their actions were pretextual demonstrate that his claims lacked foundation.

Plaintiff's complaint alleged that he was discriminated against and subjected to harassment in the teaching assignments and discipline he received.  In particular, Plaintiff complained that he was given more difficult teaching assignments than other teachers and was written up and placed on a growth plan for deficiencies in his special education paperwork while no other teachers were

---

[2] Defendants also ask me to consider factors relating to "the context of the case and the manner in which it was prosecuted." (Doc. 144 at 4.)  Defendants suggest that "in some discrimination cases, the issues being litigated are much more important than in others" and question the significance of Plaintiff's discrimination claims because he did not lose his job and he suffered no significant economic loss.  (*Id.* at 5.)  I will not judge the relative importance of one plaintiff's civil rights claims as compared to another's.  The Tenth Circuit's case law is clear that a discriminatory adverse employment action is not limited to lost wages and benefits.  *See Sanchez v. Denver Pub. Sch.,* 164 F.3d 527, 532 (10th Cir. 1998).  Had Plaintiff produced evidence to survive summary judgment, he would have had as much right to pursue his claims as a plaintiff alleging wrongful termination or failure to promote.  Defendants also suggest that the manner in which Plaintiff litigated the matter merits consideration.  Indeed this appears to be an important point for Defendants as they devote nearly half of their supporting memorandum to recounting various incidents in which Plaintiff or his attorney allegedly were uncooperative, unprofessional, antagonistic or belittling.  (*Id.* at 5-11.)  However, Defendants provide no evidence to substantiate these allegations nor do they cite any evidence already in the record.  Defendants state that they do not wish to "bore[] the Court with a transcript of these depositions" (*id.* at 7); yet a party moving for attorney's fees must submit evidence "in the form of affidavits, deposition excerpts, or other documents, in support of allegations of fact."  D.N.M.LR-Civ. 54.5(a), 7.3(b).  I will not consider these factors in support of Defendants' request for fees.

disciplined for such deficiencies.  He also complained that Defendant Gallegos harassed him with

impossible work-related demands and criticisms, wrote him up when he complained, encouraged

other administrators to harass him, and retaliated against him when he complained of racial

discrimination.    Plaintiff's claims under the federal civil rights statutes included claims for

discrimination and retaliation under Title VII and 42 U.S.C. § 1981 and for retaliation under § 504

of the Rehabilitation Act.[3]

Plaintiff failed to support his allegations with evidence.[4]  I granted Defendants' motion for

summary judgment because Plaintiff failed to exhaust administrative remedies, did not establish a

prima facie case and did not show that the reasons Defendants gave for their actions were pretextual.

Specifically, Plaintiff never brought his retaliation claim before the EEOC, yet later included this

claim in his federal lawsuit.  Plaintiff also failed to establish a prima facie case because he did not

show that any of the acts he complained of rose to the level of adverse employment actions.

Although acts that carry a significant risk of humiliation, damage to reputation, and harm to future

employment prospects may be adverse employment actions, Plaintiff did not provide any evidence

that the growth plans, write-ups, and teaching assignments could have such an affect nor did he

demonstrate that they affected the terms of his employment or changed his responsibilities in any

significant way.  (*See* Doc. 127 at 14-17, citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761

---

[3] Giving Plaintiff the full benefit of the doubt, I also liberally construed his complaint to include a claim for hostile work environment, but then found that he failed to establish a prima facie case as to this claim as well.

[4] Throughout the litigation my consideration of Plaintiff's case was affected by the manner in which it was presented.  I was obliged to admonish Plaintiff's counsel on several occasions.  (*See, e.g.,* Doc. 118 at 3 n.3, n.4.)  Particularly at the summary judgment stage, untimeliness and irregularities in Plaintiff's affidavit evidence caused me to exclude some of that evidence from consideration.  (*See* Doc. 127 at 19-21.) Although I sympathize with Plaintiff for the poor quality of the representation he received, I am confident that the record lacks any evidence that would support his claims and "the consequences of [his] attorney's mistakes should not be visited on the other side." *Davidson v. Keenan*, 740 F.2d 129, 133 (2nd Cir. 1984).

(1998); *Hillig v. Rumsfeld*, 381 F.3d 1028, 1032, 1033 (10th Cir. 2004).)  Moreover, even assuming that Defendants' actions constituted adverse employment actions, Defendants provided legitimate, nondiscriminatory reasons for their actions and Plaintiff failed to present any evidence that the proffered reasons were pretext for discrimination.  Defendants maintained that the write-ups and growth plans were merited by numerous and significant errors in Plaintiff's special education documents and that the teaching assignments were dictated by the needs of the students and the teachers' capabilities.  Plaintiff's excuses for the deficiencies in his own paperwork and complaints regarding his teaching assignments failed to show "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in Defendants' proffered reasons.  (*See* Doc. 127 at 21-22, citing *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 490 (10th Cir. 2006).)  In short, there was no evidence of discrimination or retaliation in the record to support Plaintiff's allegations.  Plaintiff's claims were thus without foundation and Defendants are entitled to attorney's fees.

### Amount of Fees

Defendants request $41,804.86 in attorney's fees.  Defense counsel, Matthew Holt, states that he believes this figure is reasonable.  (Doc. 144 Affidavit at ¶ 9.)  Yet Defendants have not adequately documented the requested amount.

The civil rights statutes Plaintiff sued under allow the prevailing party to recover "reasonable" attorney's fees.  *See* 29 U.S.C. § 794a(b); 42 U.S.C. §§ 1988(b), 2000e-5(k).  A "reasonable" fee under these statutes is "the product of reasonable hours times a reasonable rate." *Homeward Bound, Inc. v. Hissom Mem'l Ctr.*, 963 F.2d 1352, 1353 (10th Cir. 1992).  This figure is known as the "lodestar."  *Id.*  The moving party bears the burden of establishing entitlement to an award of attorney fees and documenting the appropriate hours expended and hourly rates. *Case*

*v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1249 (10th Cir. 1998).

Regarding reasonable hours, the Tenth Circuit has held, "Counsel for the party claiming the fees has the burden of proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Id.* at 1250. A billing entry that simply refers to time spent in "conference" does not meet this requirement. *See id.* at 1253. The court may omit time from the attorney fee calculation if the records are "sloppy and imprecise" and fail to document adequately how large blocks of time were spent. *Id.* at 1250 (quoting *Jane L.*, 61 F.3d at 1510). The court may also omit time spent on background research or time that was unnecessary, irrelevant, or duplicative. *Id.* The court does not have to identify or justify each disallowed hour; it is permissible to make a general reduction in hours to reach a reasonable number as long as the court provides sufficient reasons for the result. *Id.*

Regarding reasonable rates, the Tenth Circuit has held, "The first step in setting a rate of compensation for the hours reasonably expended is to determine what lawyers of comparable skill and experience practicing in the area in which the litigation occurs would charge for their time." *Id.* at 1256 (internal quotation marks omitted). The court must set a rate that is compatible with competent, trustworthy evidence of the market. *Id.* The court may set the rate below an attorney's customary rate if the attorney is not an expert in employment discrimination cases. *See id.* at 1257. "Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate." *Id.*

If the services of other professionals, such as law clerks and paralegals, are not reflected in the attorney's fee, the court may award them separately as part of the fee for legal services. The

court should scrutinize the reported hours and the suggested rates in the same manner as it scrutinizes lawyer time and rates. *Id.* at 1249.

In support of their motion Defendants submitted a billing statement and the affidavit of Matthew Holt.  Mr. Holt's affidavit indicates that he has been licensed to practice for twenty-five years and has been with his current firm for over ten years.  He provides no information regarding his experience or expertise in employment discrimination cases and does not attempt to show that his rates are comparable to the prevailing market rates in this area.  Mr. Holt states that although he was the principal attorney on this case, other attorneys in his firm, a paralegal, and legal assistants assisted him.  He further states:

> When I first began work on this file, I was charging my clients in this case $125 per hour.  Later, before I completed work in this file, I had increased my rate to my clients in this case to $150 per hour.  Other attorneys in the firm charged the same or less than I charged.  The paralegal and legal assistants working on the file, of course, charged significantly less.  I believe these rates are reasonable.

The affidavit does not identify the other attorneys, the paralegal or the assistants who worked on the case, provide their hourly rates, or offer any evidence that their rates are reasonable.

Attached to the affidavit is a billing statement that shows the time spent and work performed on the case on particular dates and the amount billed for the work.  The billing statement includes entries for several lengthy conferences that do not detail the work performed.  The billing statement also reflects work performed for clients who are not now moving for attorney's fees.  Defendants' application for attorney's fees and memorandum in support both state that they are on behalf of Defendants GISD and Rafael Gallegos, yet the attached billing statement includes work performed for Cynthia Nava, Carolyn Lindau, and Ron Haugen, all of whom were dismissed from the case in November 2008.  (Doc. 74.)  Defendants GISD and Gallegos have not argued that they are entitled to attorney's fees for work performed on behalf of the earlier dismissed defendants.

7

Given the inadequate support for the fees requested I will reduce the fees to a reasonable amount based on the documentation Defendants provided.  Assuming the initials MPH represent Matthew P. Holt, the work of other firm employees and the work performed on behalf of defendants who are not seeking attorney's fees accounts for approximately $10,000 of the total bill.  Mr. Holt performed more than $2000 worth of work after I granted summary judgment on most of Plaintiff's claims, including work on the motion for reconsideration of Plaintiff's § 504 claims, necessitated by Defendants' original briefing, and trial preparation before I granted the motion for reconsideration.  I do not countenance awarding these fees against Plaintiff.  Finally, the general entries for "conference" amount to approximately $3,000.  Taking into account these reductions and making a corresponding adjustment for sales tax on fees, I find $20,000 to be a reasonable award.

IT IS SO ORDERED.

_William P. Lynch_

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

A true copy of this order was served
on the date of entry--via mail or electronic
means--to counsel of record and any *pro se*
party as they are shown on the Court's docket.                    8